

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

KTF:GP
F. # 2022R00226

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 4, 2022

<u>By E-mail</u>

The Honorable Marcia M. Henry
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Jahseem Jackson
      <u>Magistrate Docket No. 22-M-816</u>

Dear Judge Henry:

  Later today, the above-referenced defendant will appear before Your Honor for arraignment upon the above-referenced complaint ("the Complaint"). The government respectfully submits this letter in support of its application for a permanent order of detention for the defendant because he is a danger to the community and a flight risk, and no combination of conditions can mitigate these risks. Accordingly, he should be detained.

I. <u>Background</u>

  John Doe, a man in his sixties, used to own and operate a small business in Staten Island, New York. John Doe's life became a living hell when the defendants Jahseem Jackson ("Jahseem"), Gerome Jackson ("Gerome") and Kiernan Todzia ("Todzia") (together, the "defendants")—all in their early twenties—abruptly showed up at John Doe's store in mid-February 2022. For the next several weeks, through intimidation and threats to John Doe and his family, including brandishing a weapon, the defendants repeatedly used John Doe as their personal ATM. As detailed in the Complaint, the defendants forced John Doe to pay for the defendants' hotel rooms and rental cars on multiple occasions. The defendants also took at least two credit cards from John Doe and then freely used them without John Doe's approval. In total, the defendants extorted at least $11,000 from John Doe within a three-week span, significantly impacting John Doe's life and business.

  During this time period, the defendants, especially Jahseem and Gerome, who are brothers (together, the "Brothers"), threatened to kill John Doe and his family on multiple occasions, sometimes several times on a single day. These were not empty threats. On one occasion in February 2022, while inside John Doe's store, Jahseem brandished what appeared to

be a painted machine gun. Between February 2022 and March 2022, on his Instagram account, using his "La Dumbout" handle, Jahseem posted several photos depicting what appears to be the same painted machine gun that Jahseem had brandished inside John Doe's store.

As shown below, one of those photos shows a firearm being painted red with a caption "Fukk it ima paint da city red." Also shown below is another photo of the painted firearm (the "Painted Firearm") in between an individual's legs as Gerome stands next to it holding a handgun.



Law enforcement identified the Painted Firearm as a semi-automatic 9mm carabine. In addition to these two posts, Jahseem posted a video of him holding a handgun while another individual is holding the Painted Firearm. Below are screenshots of the said video posted on Jahseem's Instagram account:



On another occasion in February 2022, when John Doe refused to give one of his credit cards to the defendants, the Brothers told John Doe that they would go see his wife for a credit card instead. The Brothers knew where John Doe and his wife lived. Additionally, on March 5, 2022, when John Doe refused to purchase a clothing item for Gerome, Gerome told John Doe that the defendants could instead ask John Doe's daughter for it and then cited the daughter's address. On the same day, one of the defendants' associates entered John Doe's vehicle and twirled a knife in his hands while wearing a ski mask.

Furthermore, on March 7, 2022, when Gerome was arrested in Daytona Beach, Florida for suspicion of grand theft auto, Jahseem called John Doe's phone and accused John Doe of reporting the vehicle Gerome was driving stolen. During a near 10-minute call, Jahseem repeatedly yelled and swore at John Doe, blaming him for Gerome's arrest. Then, days after his arrest, Gerome had an associate of his send text messages to John Doe, threatening him to pay for Gerome's bond. Below is a screenshot of the said text messages ("Rome" in the messages refers to Gerome):



Following his March 7, 2022 arrest in Florida, Gerome was eventually brought back to New York, where he was separately charged and then convicted of an attempted criminal

possession of a weapon, in violation of New York state law.  As a result, Gerome currently is incarcerated at the Wyoming Correctional Facility in Attica, New York.

On August 3, 2022, the Honorable Vera M. Scanlon signed the Complaint, charging the defendants with one count of Hobbs Act extortion conspiracy, in violation of Title 18, United States Code, Section 1951(a).  Judge Scanlon also issued warrants for the defendants' arrests.  On August 4, 2022, Jahseem and Todzia were arrested.

II.     Legal Standard

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e).  A finding of dangerousness must be supported by clear and convincing evidence, United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995), and risk of flight must be proven by a preponderance of the evidence, United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, including whether the offense involves a controlled substance or a firearm; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger posed by the defendant's release.  See 18 U.S.C. § 3142(g).

The possibility of a severe sentence is an important factor in assessing a defendant's likelihood of flight.  See United States v. Jackson , 823 F.2d 4,7 (2d Cir. 1987); United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with serious offenses whose maximum combined terms created potent incentives to flee); United States v. Cisneros, 328 F.3d 610, 618 (l0th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight."); United States v. Dodge, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (possibility of a "severe sentence" heightens the risk of flight).

Evidentiary rules do not apply at detention hearings and the government is entitled to present evidence by way of proffer, among other means.  See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000).  In the pre-trial context, few detention hearings involve live testimony or cross-examination.  Most proceed on proffer.  LaFontaine, 210 F.3d at 131.  This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." Id. (internal quotation marks omitted); see also Mercedes, 254 F.3d at 437 ("[The defendant] has twice been convicted of weapon possession—

one felony conviction, and one misdemeanor conviction. We find the district court committed clear error in failing to credit the government's proffer with respect to [the defendant's] dangerousness.").

Where a judicial officer concludes after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1).

III. Argument

Every Section 3142(g) factor counsels heavily in favor of Jahseem's detention. The government more than meets its burden of showing by clear and convincing evidence that Jahseem poses a danger to the community based on his access to firearms and previous threats against John Doe. Moreover, his significant and recent criminal history, the overwhelming evidence of his criminal conduct, and the high penalties he faces all demonstrate by a preponderance of the evidence that Jahseem poses a flight risk.

    A.     Nature of the Charged Offense

The crime charged in this case is extremely serious as the defendants bullied, terrorized and threatened John Doe for several weeks, causing significant emotional and financial damages to John Doe. Taking advantage of John Doe's vulnerability, the defendants satisfied their greed by forcing John Doe to pay for hotels and rental cars, as well as running up tabs on John Doe's credit cards for luxury goods and items. Furthermore, whenever the defendants did not get what they wanted from John Doe, they made threats against John Doe's family, referencing John Doe's wife and daughter, including the daughter's address.

    B.     The Weight of the Evidence

The government's case is strong as an overwhelming amount of evidence corroborates John Doe's account. Surveillance camera footage from hotels and stores captured the defendants' charged conduct in this case. Additionally, credit card statements, store receipts, phone records and social media posts documented the defendants' extortion activities.

    C.     The Defendant's History and Characteristics

Although Jahseem is only 21 years old, he already has been convicted of two drug related felony offenses. In March 2021, Jahseem was convicted of Criminal Possession of a Controlled Substance in the Third Degree and Criminal Sale of a Controlled Substance in the Third Degree, stemming from two separate arrests in October 2019 and November 2019, respectively. For these two felony offenses, Jahseem was primarily sentenced to one year's imprisonment. In addition to the conviction noted above, Jahseem was arrested in September 2020 for weapon related charges, including criminal possession of a loaded firearm.

The past conviction and arrest have not deterred Jahseem from engaging in further criminal conduct, including the instant offense. As such, there is no evidence that Jahseem will comply with conditions of pretrial supervision if he is released.

D.  The Defendant Poses a Danger and a Risk of Flight

Given the seriousness of the conduct outlined above, as well as Jahseem's access to firearms, his release would present a serious danger to the community, especially to John Doe and his family. This danger is not a theoretical one. The charged conduct directly relates to multiple threats the defendants made against John Doe and his family. Moreover, as demonstrated by his Instagram posts, Jahseem has multiple firearms, one of which he brandished inside John Doe's store. See United States v. Smalls, No. 20-CR-216 (LTS), 2020 WL 1866034, at *1 (S.D.N.Y. Apr. 14, 2020) (declining to overrule magistrate judge's pretrial detention determination that was based in part on "the general danger to the community posed by [the defendant's] apparently ready to access to firearms"). If released, Jahseem will pose a real danger to John Doe and his family, as Jahseem knows where John Doe and his family reside, including John Doe's daughter. This danger cannot be cured by any combination of release conditions.

Jahseem also faces significant evidence of his criminal conduct and harsh penalties prescribed by law, giving him a substantial incentive to flee. "When faced with the possibility of a significant prison term, defendants have a strong incentive to flee." United States v. Edwards, 2021 WL 796089, at *2 (E.D.N.Y. Mar. 2, 2021). The government preliminarily estimates that Jahseem's Guidelines range for the charged conduct is 78 to 97 months' imprisonment. The government's investigation is also ongoing, and Jahseem may face additional charges that increase his sentencing exposure, including but not limited to charges under 18 U.S.C. § 924(c), for unlawfully brandishing a firearm, a charge that would carry a mandatory minimum sentence of seven years and a possible maximum sentence of life imprisonment.

The Second Circuit has held that the possibility of a severe sentence—including a sentence similar to the one Jahseem faces—can establish flight risk. See United States v. Scali, 738 F. App'x 32, 33 (2d Cir. 2018) ("The court reasonably determined that [the defendant]'s Guidelines range of 87-108 months' imprisonment was significant enough to provide an incentive to flee."); see also United States v. Khusanov, 731 F. App'x 19, 21 (2d Cir. 2018) ("[A] district court does not clearly err in concluding that a defendant facing a potentially lengthy prison sentence possesses a strong motive to flee.").

IV.	Conclusion

        For the foregoing reasons, the government respectfully requests that the Court issue a permanent order of detention against the defendant Jahseem Jackson.

                                            Respectfully submitted,

                                            BREON PEACE
                                            Acting United States Attorney

                              By:    /s/Gabriel Park
                                            Gabriel Park
                                            Assistant U.S. Attorney
                                            (718) 254-6099

cc:	Defense Counsel (by E-mail)